**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

_____

**STEVEN DELONGE, PAUL SCOPTUR,
and STEPHEN RAYMONDS,**
                      **Plaintiffs,**

**v.**                                                 **Case No. 13-CV-0988**

**TIME WARNER CABLE BUSINESS LLC,
TIME WARNER CABLE ENTERPRISES LLC,
TIME WARNER CABLE MEDIA INC.,
TIME WARNER CABLE MIDWEST LLC,
and TIME WARNER CABLE INFORMATION
SERVICES (WISCONSIN), LLC,**
                        **Defendants.**
_____

## DECISION AND ORDER

Plaintiffs filed this putative class action suit in Wisconsin state court alleging breach of contract. Defendants removed the case to federal court on diversity grounds.[1] Subsequently defendants filed a motion asking me to stay or dismiss the case and to compel arbitration because of an arbitration clause in Time Warner Cable's ("TWC") subscriber agreement. That motion is before me now.

Defendants are multichannel video providers who offer video programming services to Wisconsin consumers pursuant to a written contract called the subscriber agreement. Plaintiffs all subscribe to TWC's video programming services. Plaintiffs allege that as part of their contract, TWC agreed to provide Channel 4 (Milwaukee NBC-affiliate WTMJ-TV) and that TWC discontinued Channel 4 on July 25, 2013, breaching their contract and

---

[1] In their Notice of Removal (ECF No.1), defendants allege diversity of citizenship and aggregate potential damages exceeding $5 million. *See* 28 U.S.C. § 1332(d)(2). I have confirmed that minimal diversity exists, and plaintiffs have not contested defendants' estimate of potential damages.

violating Wis. Stat. § 100.209.

TWC's standard practice is to give new residential customers a "Welcome Kit" containing their subscriber agreement. The first page of the subscriber agreement contains a statement in bold, capitalized letters alerting customers to the arbitration clause. Dzujna Decl. Ex. A, ECF No. 10-1.The arbitration clause states that each party agrees to resolve "disputes" through arbitration and to not bring claims on behalf of others including any class of people. *Id*. The provision allows customers to opt out of the arbitration agreement in writing or online withing 30 days of the date the customer was first subject to the arbitration provision. *Id.* None of the plaintiffs in this case have ever opted out of the arbitration clause.

Defendants ask me to enforce the arbitration clause and compel plaintiffs to arbitrate pursuant to § 4 of the Federal Arbitration Act ("FAA") and to stay or dismiss the case pursuant to § 3 of the FAA. The arbitration agreement at issue is a provision of a contract which evidences transactions involving interstate commerce, therefore the FAA applies. 9 U.S.C. § 2. The FAA provides that "an agreement in writing to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* In evaluating a motion to compel arbitration under the FAA, I review the evidence to determine whether the parties have entered into a valid agreement and whether the claims asserted fall within the scope of the agreement. *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004). In doing so, I apply a standard of review similar to the summary judgment standard in Fed. R. Civ. P. 56. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). In other words,

I consider whether there is a genuine issue of material fact and take all reasonable inferences in favor of the non-movant. *Id.* "Whether a binding arbitration agreement exists is determined under principles of state contract law." *Id.* at 733. There is no choice of law provision in the subscriber agreement. Neither party explicitly argues for a particular state law, although defendants seem to implicitly argue that Wisconsin law should apply by citing Wisconsin authority. All plaintiffs reside in Wisconsin, the contracts were formed in Wisconsin, and all relevant events occurred in Wisconsin, therefore I will apply Wisconsin law. *See id*.

Plaintiffs argue that they had no notice of and did not agree to TWC's arbitration clause. In order for an arbitration clause to be enforceable it must be agreed upon by both parties. *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005). Plaintiffs state that they do not recall receiving Welcome Kits or being notified about the arbitration clause in TWC's subscriber agreement. They argue that TWC has provided no evidence that any of the plaintiffs were aware of or agreed to the arbitration clause and thus they cannot be compelled to arbitrate. In response, TWC argues that each plaintiff was notified of the arbitration clause and that they accepted the clause by continuing to use TWC's services.

I conclude that under the law as it now exists, I find that plaintiffs accepted the subscriber agreement and with it the arbitration clause. "A vendor, as master of the offer, may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance." *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996) (interpreting Wisconsin law). TWC's subscriber agreement specifically invited acceptance

3

of its terms or changes to its terms through signature of a Work Order or continued use of services. Dzujna Decl. Ex. A, ECF No. 10-1 ("By signing your Work Order or using our Services, you accept (in other words, make legally binding) these Customer Agreements."). It also provided that if a customer did not agree with the terms or with changes to the subscriber agreement, s/he should cancel their services. *Id.* ("If you do not agree to the changes, you will need to contact your local TWC office to cancel your Services.") TWC provides evidence that at least two of the three plaintiffs signed Work Orders which referenced the terms and conditions of the subscriber agreement, thereby accepting the terms. What's more, all customers, including plaintiffs, received notice of changes to the subscriber agreement with their May 2010 billing statements, including specific notice of the current arbitration clause. The notice appeared under a section titled "LOOK HERE: IMPORTANT NOTICES" and read "You have a new Time Warner Cable Subscriber agreement which contains an arbitration clause and other important terms. You can review the new agreement and, if you wish to 'opt out' of the arbitration clause at http://www.twcable.com/html/policies.html." Dzujna Supp. Decl. Ex. A, ECF No. 17-1. After May 2010, all plaintiffs continued to pay their monthly bills and to use TWC's services, thereby accepting the new terms of the subscriber agreement including the arbitration clause. Whether or not plaintiffs read the arbitration clause or were aware of all of its terms, they are still bound by it. *Raasch v. City of Milwaukee*, 310 Wis. 2d 230, 241 (Ct. App. 2008); *see also Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997). The only evidence plaintiffs offer that they were not aware of the arbitration clause are their own affidavits. In the face of the evidence provided by TWC that plaintiffs received notice of the arbitration clause and accepted it, plaintiffs' affidavits do not raise a genuine issue of

material fact. *See Tinder*, 305 F.3d at 735–36.

I also find that plaintiffs' claims fall within the scope of the arbitration agreement. The subscriber agreement broadly defines "dispute" as "any dispute, claim, or controversy between you and TWC regarding any aspect of your relationship with us." Dzujna Decl. Ex. A, ECF No. 10-1. Plaintiffs' breach of contract claims in which they seek money damages and credits fall within this broad definition. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008) ("Where the arbitration clause is broad, there is a presumption in favor of arbitrability.").

Plaintiffs request that I grant limited discovery to determine how many times TWC has changed the arbitration clause, how long TWC has utilized the standard practice of issuing Welcome Kits, and whether TWC explained the arbitration clause to plaintiffs. None of these issues are material to whether or not plaintiffs agreed to the arbitration clause or to whether this claim falls within the scope of the arbitration agreement. For the foregoing reasons, I conclude that plaintiffs had notice of and agreed to the arbitration clause, making it binding on plaintiffs, and that this dispute falls within the scope of the agreement. Therefore, I grant defendants' motion to compel arbitration and stay further proceedings in the present case. *See* 9 U.S.C. § 3; *see also Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("[T]he proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." (internal quotations and citation omitted)).

**THEREFORE, IT IS ORDERED** that defendants' motion to stay or dismiss the case

and compel arbitration (ECF No. 8) is **GRANTED**. The proceedings in this case are **STAYED** pending arbitration.

Dated at Milwaukee, Wisconsin, this 6th day of August, 2014.

s/ Lynn Adelman

LYNN ADELMAN
District Judge